1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

12  JOHN HUANG,
                                NO. CIV. S-07-0589 WBS
13            Plaintiff,
                                ORDER RE: MOTION TO DISMISS
14       v.

15  RICHARD W. WIEKING, JEANE
    DEKELVER, _____       _____
16
              Defendants._____
17

18                         ----oo0oo----

19            Plaintiff John Huang brought this action for damages,

20  based on allegations that his termination by defendants violated

21  his due process and equal protection rights guaranteed under the

22  Fifth Amendment to the United States Constitution.  Defendants

23  now move to dismiss plaintiff's complaint pursuant to Federal

24  Rules of Civil Procedure 12(b)(1) and 12(b)(6).

25  I.  Factual and Procedural Background

26            Beginning on November 29, 1999, until his subsequent

27  termination on November 14, 2006, plaintiff was employed by the

28  United States District Court for the Northern District of

1

1  California ("Northern District") as a Deputy Clerk and Financial

2  Technician.  (Compl. 2.)  Defendant Richard Wieking is the Clerk

3  of the Court, and defendant Jean DeKelver, plaintiff's superior,

4  serves as the Criminal Justice Act ("CJA") Unit Supervisor.

5  (Id.)

6         As a member of the "excepted service" of the civil

7  service (5 U.S.C. § 2103(a)), Huang's employment was governed by

8  the Civil Service Reform Act of 1978 ("CSRA"), an elaborate

9  remedial statutory scheme which establishes the rights and

10 benefits of civil service employees.  Pub. L. No. 95-454.  In the

11 event that an "adverse action" is brought against a civil service

12 employee, the employee may pursue an appeal of that decision via

13 one of two detailed appeals procedures, whereby the decision is

14 reviewed by a mediator, the Clerk of the Court, and/or the Chief

15 Judge.[1] (Garchik Decl. Ex. A Chapter 19.)

16        On October 20, 2006, plaintiff was served with a Notice

17 of Adverse Action from defendant DeKelver, which informed him of

18 his immediate termination.  (Pl's Opp'n to Mot. to Dismiss 3.)

19 The notice advised him that he was being terminated based on

20 unacceptable performance in 1) his ability to focus on work

21 without constant supervision, 2) his ability to work

22

23        [1]    An adverse action may be appealed either via the
   Employee Dispute Resolution ("EDR") Plan for the Northern
24 District, or, when there are allegations of discriminatory
   treatment, the "Grievance and EEO Policy" contained in the Human
25 Resources Manual for the Clerk's Office for the Northern
   District.  (Garchik Decl. Exs. A, B.)  The EDR Plan contains an
26 "Election of Remedies" clause, which specifies that if an
   employee appeals an adverse action, he "must elect either (a) the
27 EDR Plan or (b) the grievance/adverse action appeal procedures .
   . ."  (Garchik Decl. Ex. A, Chapter VIII, §2.G.)  An employee may
28 not utilize both.  (Id.)

1  independently, 3) his ability to function at the level required,
2  and 4) his attendance.  (Garchik Decl. Ex. C at 1 (Notice of
3  Adverse Action).)

4          On October 27, 2006, plaintiff responded to defendant
5  Wieking with a memo, objecting to DeKelver's Notice of Adverse
6  Action and requesting an appeal.  (Pl's Opp'n to Mot. to Dismiss
7  3.)  Wieking responded by letter to plaintiff on November 1,
8  2006, informing him that a hearing date for his appeal had been
9  set for November 9, 2006, pursuant to the "Grievance and EEO
10 Policy" procedures in Section 19.6.A of the Human Resources
11 Manual.  (Id.)  On November 9, 2006, Wieking held an
12 administrative hearing, which was attended by plaintiff and
13 plaintiff's counsel, as well as DeKelver, CJA Administrator Pat
14 Harris, Administrative Manager Anita Bock, and Human Resources
15 Supervisor Beverly Keh-Hoy.  (Garchik Decl. Ex. C at 23 (Wieking
16 letter to Huang).)  After considering all the facts, Wieking
17 issued a letter on November 14, 2006, which explained his
18 determination that the Adverse Action was valid and plaintiff's
19 termination was to become effective immediately.  (Id. at 64.)

20          On November 21, 2006, plaintiff sent a letter to Ms.
21 Keh-Hoy, reiterating his belief his termination was in violation
22 of fair and equal employment guidelines and arguing that the
23 decision rendered by Wieking was merely a pretext for
24 perpetuating this unlawful discrimination.  (Id. Ex. D at 1
25 (Charge of Employment Discrimination.)  The letter contained a
26 complaint form filled out by plaintiff, which sought resolution
27 of his dispute under the EDR plan.  (Id.)  On November 27, 2006,
28 Ms. Keh-Hoy responded to plaintiff's letter, informing him that

3

1   pursuant to the EDR Plan's "Election of Remedies" provision,
2   Huang's hearing (which constituted an appeal under the Clerk's
3   Office adverse action appeal procedures) meant he was ineligible
4   to also file a complaint under the court's EDR Plan.  (Id. at 5.)

5        On February 13, 2007, plaintiff filed a first amended
6   complaint against defendants, alleging that 1) his termination
7   violated his Fifth Amendment right to equal protection under the
8   law, and 2) the subsequent grievance procedures employed by
9   defendants violated his Fifth Amendment right to due process.
10  (First Amended Complaint ("FAC").)  Plaintiff seeks damages for
11  lost wages and benefits, as well as costs of suit.  (FAC 5.)
12  Defendants argue that the court lacks subject matter jurisdiction
13  over plaintiff's claim and/or that the complaint fails to state a
14  claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(1)
15  & 12(b)(6).
16  II.  Discussion
17       A.   Legal Standard
18       On a motion to dismiss, the court must accept the
19  allegations in the complaint as true and draw all reasonable
20  inferences in favor of the pleader.  Scheuer v. Rhodes, 416 U.S.
21  232, 236 (1974); Cruz v. Beto, 405 U.S. 319, 322 (1972).  The
22  court may not dismiss for failure to state a claim unless "it
23  appears beyond doubt that plaintiff can prove no set of facts in
24  support of his claim which would entitle him to relief." Van
25  Buskirk v. CNN, Inc., 284 F.3d 977, 980 (9th Cir. 2002).
26  Dismissal is appropriate, however, where the pleader fails to
27  state a claim supportable by a cognizable legal theory.
28  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

4

1   1988).

2        In general, the court may not consider material other
3   than the facts alleged in the complaint when ruling on a motion
4   to dismiss.  Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir.
5   1996).  However, the court may consider materials of which it may
6   take judicial notice, including matters of public record.  Mir v.
7   Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988); Fed.
8   R. Evid. 201(b) (defining the scope of judicial notice); see also
9   Mack v. S. Bay Beer Distribs., 798 F.2d 1279, 1282 (9th Cir.
10  1986), abrogated on other grounds by Astoria Fed. Sav. & Loan
11  Ass'n v. Solimino, 501 U.S. 104 (1991) ("A court may take
12  judicial notice of 'records and reports of administrative
13  bodies.'") (quoting Interstate Natural Gas Co. v. S. Cal. Gas
14  Co., 209 F.2d 380, 385 (9th Cir. 1953)).  Because the additional
15  materials submitted by plaintiff in opposition to this motion
16  (the Grievance and EEO Policy, the EDR Plan, and the
17  administrative record of plaintiff's termination) are part of the
18  public record, the court may properly consider them here.

19       B.   Fifth Amendment Bivens Action

20       In Bivens v. Six Unknown Named Agents of Fed. Bureau of
21  Narcotics, 403 U.S. 388, 397 (1971), the Supreme Court held that
22  a violation of the Fourth Amendment by a federal agent while
23  acting under the color of his federal authority may give rise to
24  a cause of action for damages.  The Court reasoned that, while
25  the Fourth Amendment does not explicitly provide a cause of
26  action for damages resulting from unconstitutional conduct, it is
27  well settled that when "legal rights have been invaded, and a
28  federal statute provides for a general right to sue for such

1  invasion, federal courts may use any available remedy to make
2  good the wrong done." <u>Id.</u> at 396 (citing <u>Bell v. Hood</u>, 327 U.S.
3  678, 684 (1946)).  The court subsequently extended the <u>Bivens</u>
4  cause of action to apply to violations of the Fifth Amendment as
5  well. <u>Davis v. Passman</u>, 442 U.S. 228, 248 (1979).

6          However, in both <u>Bivens</u> and <u>Passman</u>, the Supreme Court
7  recognized that creating such a remedy was proper only because 1)
8  there was no "explicit Congressional declaration" that a person
9  with plaintiff's injury could not recover damages, and 2) there
10  were "no special factors counseling hesitation in the absence of
11  affirmative action by Congress." <u>Bivens</u>, 403 U.S. at 396-97;
12  <u>Passman</u>, 442 U.S. at 245-47.  Conversely, when the "design of a
13  Government program suggests that Congress has provided what it
14  considers adequate remedial mechanisms for constitutional
15  violations in the course of its administration," a judicially
16  created remedy is not appropriate. <u>Schweiker v. Chilicky</u>, 487
17  U.S. 412, 423 (1988) (refusing to allow a Fifth Amendment <u>Bivens</u>
18  action for allegedly discriminatory administration of Social
19  Security benefits, because "Congress is the body charged with
20  making the inevitable compromises required in the design of a
21  massive and complex welfare benefits program") (citing <u>Bush v.</u>
22  <u>Lucas</u>, 462 U.S. 367, 368 (1983))).  Accordingly, when there are
23  "indications that congressional inaction has not been
24  inadvertent," both the Supreme Court and the Ninth Circuit refuse
25  to create a <u>Bivens</u> action. <u>Schweiker</u>, 487 U.S. at 423; <u>Moore v.</u>
26  <u>Glickman</u>, 113 F.3d 998, 994 (9th Cir. 1997).

27          In <u>Blankenship v. McDonald</u>, the Ninth Circuit
28  considered whether a <u>Bivens</u> action would be proper in the context

of an employee covered by the CSRA.  176 F.3d 1192 (9th Cir. 1999).  The court observed that "[t]he CSRA contains an 'elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations . . . .'"  Id. at 1195 (quoting Bush, 462 U.S. at 388). Accordingly, because there was "no inadvertence by Congress in omitting a damages remedy against supervisors whose work-related actions allegedly violated a subordinate's constitutional rights," the court held that "the CSRA precludes a Bivens remedy . . . ."  Id. (quoting Saul v. U.S., 928 F.2d 829, 840 (9th Cir. 1991)) (noting that in the area of federal employment, Congress was better equipped to strike the balance between employees' interests in remedying constitutional violations and competing government interests of efficiency, morale, and discipline).

          This case is indistinguishable from Blankenship -- plaintiff's employment and corresponding remedial measures are governed by the CSRA, which unequivocally precludes a Bivens action as a matter of law.  This same conclusion has been reached by every circuit court that has addressed the question.  See Dotson v. Griesa, 398 F.3d 156 (2d Cir. 2005) (citing Lombardi v. Small Bus. Admin., 889 F.2d 959, 961 (10th Cir. 1989); Feit v. Ward, 886 F.2d 848, 854-56 (7th Cir. 1989); Volk v. Hobson, 866 F.2d 1398, 1403 (Fed. Cir. 1989); Spagnola v. Mathis, 859 F.2d 223, 228-29 (D.C. Cir. 1988); Pinar v. Dole, 747 F.2d 899, 910-12 (4th Cir. 1984); Braun v. United States, 707 F.2d 922, 926 (6th Cir. 1983); Broadway v. Block, 694 F.2d 979, 985 (5th Cir. 1982)).

          In opposition to the present motion, plaintiff argues

7

that, regardless of the prohibition against <u>Bivens</u> actions, his

termination was constitutionally defective because it never

received adequate judicial review.  Plaintiff cites to 28 U.S.C.

§ 751(b), which indicates that employees such as plaintiff are

subject "to removal by the clerk <u>with the approval of the court</u>."

28 U.S.C. § 751(b) (emphasis added).[2]  At the hearing on the

motion, counsel for plaintiff argued that this statute entitled

plaintiff to review of his termination by a judge acting in his

or her judicial capacity exercising full powers under Article III

of the United States Constitution.  However, when pressed by the

court, counsel was unable to cite to any authority, based in

either case-law or statute, which supports this assertion.

Just because a statute provides for certain procedures,

it does not follow that any party who feels aggrieved because

those procedures were not properly followed may bring an

independent action for damages.  <u>See</u> <u>Alexander v. Sandoval</u>, 532

U.S. 275, 286 (2001) (citing <u>Transamerica Mortgage Advisors, Inc.</u>

<u>v. Lewis</u>, 444 U.S. 11, 15 (1979)).  Without explicit action by

Congress creating a private right of action, "a cause of action

does not exist and courts may not create one, no matter how

desirable that might be as a policy matter, or how compatible

with the statute."  <u>Id.</u> (citations omitted).  Section 751(b) sets

out the authority of the clerks of court to appoint and remove

clerical assistants and employees.  There is no suggestion that

the inclusion of the words "with the approval of the court" was

---

[2]      Notably, brief review of the administrative record
reveals that plaintiff's termination <u>was</u> reviewed by Judge
Phyllis J. Hamilton, the Chair of the Court Personnel Committee.
(Bock Decl. ¶ 3, Ex. 2.)

1  intended to confer a private right of action on anyone.  To the
2  contrary, most likely that language was included simply to
3  reaffirm that the judges, and not the clerk, retain ultimate
4  authority over the workings of the court.

5        The Second Circuit in Dotson v. Griesa (wherein the
6  court found that, like in Blankenship, the CSRA precluded a
7  Bivens action) engaged in a comprehensive analysis of the
8  remedies available to a judicial employee, and held unequivocally
9  that judicial review was not a right afforded employees such as
10 plaintiff.  398 F.3d at 163-65.  The court explained that, while
11 the CSRA provides a right of judicial review for some civil
12 service employees, those that Congress intentionally excepted
13 from such protections have no such right.  Id.  The Dotson court
14 reiterated the Supreme Court's holding in United States v.
15 Fausto, which found that "[t]he comprehensive nature of the CSRA,
16 the attention that it gives throughout to the rights of
17 nonpreference excepted service employees, and the fact that it
18 does not include them in provisions for administrative and
19 judicial review . . . combine to establish a congressional
20 judgment that those employees should not be able to demand
21 judicial review for the type of personnel action covered by that
22 chapter."  U.S. v. Fausto, 484 U.S. 439, 448-449 (1988).
23 courts.[3]

24

25        [3]   Plaintiff cites a single district court opinion from
26 the District of Connecticut, which held that a Bivens action
   could be maintained, despite the existence of the CSRA, because
   the defendants in that case completely precluded the plaintiff
27 from pursuing the CSRA statutory remedies.  Rauccio v. Frank, 750
   F. Supp. 566 (D. Conn. 1990).  Rauccio, however, is directly
28 contradicted by Ninth Circuit law, which clearly holds that "the

1    Put simply, when a statutory remedial scheme exists (as

2 it does here with the CSRA), an aggrieved employee may <u>not</u> bring

3 a <u>Bivens</u> action for damages, even if the employee believes the

4 scheme was improperly implemented.  When Congress has legislated

5 to create (or not create) employee remedies in a particular area,

6 it is not the place of the judiciary to allow a <u>Bivens</u> action and

7 inquire into the proper administration of those remedies.

8 <u>Schweiker</u>, 487 U.S. at 423; <u>Moore v. Glickman</u>, 113 F.3d 988, 994

9 (9th Cir. 1997).  If this court were to engage in such an

10 inquiry, and expose judicial clerks and supervisors to individual

11 liability for their employment decisions, it would severely

12 undermine the "inevitable compromises" behind the delicately

13 balanced CSRA statutory regime crafted by Congress.  <u>Schweiker</u>,

14 487 U.S. at 429.

15 III. <u>Conclusion</u>

16           Plaintiff's <u>Bivens</u> action for damages, alleging

17 violations of his Fifth Amendment rights stemming from his

18 termination and subsequent appeal thereof, is precluded as a

19 matter of law by the statutory remedial scheme of the CSRA.  <u>See</u>

20 <u>Blankenship v. McDonald</u>, 176 F.3d 1192 (9th Cir. 1999).  The

21 complaint therefore fails to state a claim upon which relief may

22 be granted.

23 ///

24 ///

25

26 CSRA precludes even those <u>Bivens</u> claims for which the act
prescribes no alternative remedy."  <u>Saul</u>, 928 F.2d at 840
27 (emphasis added); <u>see also</u> <u>Moore v. Glickman</u>, 113 F.3d 988, 994
(9th Cir. 1997); <u>Kotarski v. Cooper</u>, 866 F.2d 311, 312 (9th Cir.
28 1989); <u>Blankenship</u>, 176 F.3d at 1195.

1 _____IT IS THEREFORE ORDERED that the defendants' motion to

2 dismiss be, and the same hereby is, GRANTED;

3 AND IT IS FURTHER ORDERED that the complaint and action

4 herein be, and the same hereby are, DISMISSED.

5 DATED:  May 30, 2007

6

7 WILLIAM B. SHUBB
  UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11